Slip Op. 12 - 113

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────┐
│ FINE FURNITURE (SHANGHAI)            │
│ LIMITED, et al.,                     │
│                                      │
│        Plaintiffs,                   │
│                                      │
│              and                     │
│                                      │
│ HUNCHUN FOREST WOLF INDUSTRY         │
│ COMPANY LIMITED, et al.,             │
│                                      │
│        Plaintiff-Intervenors,        │
│                                      │
│              v.                      │
│                                      │
│ UNITED STATES,                       │
│                                      │
│        Defendant,                    │
│                                      │
│              and                     │
│                                      │
│ THE COALITION FOR AMERICAN           │
│ HARDWOOD PARITY,                     │
│                                      │
│        Defendant-Intervenor.         │
└─────────────────────────────────────┘
```

Before: Donald C. Pogue,
        Chief Judge

Consol. Court No. 11-00533[1]

OPINION AND ORDER

[affirming, in part, and remanding, in part, the Department of
Commerce's Final Determination]

Dated: August 31, 2012

Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer,
Susan L. Brooks, Sarah M. Wyss, and Keith F. Huffman, Mowry &
Grimson, PLLC, of Washington, DC, for the Plaintiffs Fine
Furniture (Shanghai) Ltd.; Great Wood (Tonghua) Ltd.; and Fine
Furniture Plantation (Shishou) Ltd.

---

[1] This action was consolidated with portions of the
complaints from Court Nos. 12-00009, 12-00017, and 12-00022.
Order, Apr. 5, 2012, ECF No. 50.

Francis J. Sailer, Mark E. Pardo, Andrew T. Schutz, and Kavita Mohan, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, DC, for the Consolidated Plaintiffs Baroque Timber Industries (Zhongshan) Co., Ltd.; Riverside Plywood Corp.; Samling Elegant Living Trading (Labuan) Ltd.; Samling Global USA, Inc.; Samling Riverside Co., Ltd.; Suzhou Times Flooring Co., Ltd.; Shanghai Eswell Timber Co., Ltd.; Shanghai Lairunde Wood Co., Ltd.; Shanghai New Sihe Wood Co., Ltd.; Shanghai Shenlin Corp.; Vicwood Industry (Suzhou) Co. Ltd.; Xuzhou Shenghe Wood Co., Ltd.; and A&W (Shanghai) Woods Co., Ltd.

Gregory S. Menegaz, J. Kevin Horgan, and John J. Kenkel, deKieffer & Horgan, PLLC, of Washington, DC, for the Plaintiff-Intervenors Changzhou Hawd Flooring Co., Ltd.; Dunhua City Jisen Wood Industry Co., Ltd.; Dunhua City Dexin Wood Industry Co., Ltd.; Dalian Huilong Wooden Products Co., Ltd.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; and Karly Wood Product Ltd.

Jeffrey S. Neeley, Michael S. Holton, and Stephen W. Brophy, Barnes, Richardson & Colburn, of Washington, DC, for Plaintiff-Intervenors Hunchun Forest Wolf Industry Co. Ltd.; Dunhua City Dexin Wood Industry Co., Ltd.; Nanjing Minglin Wooden Industry Co., Ltd.; Dalian Penghong Floor Products Co., Ltd.; Dongtai Fuan Universal Dynamics, LLC; Zhejiang Fudeli Timber Industry Co., Ltd.; Dunhua City Jisen Wood Industry Co., Ltd.; Fusong Qianqiu Wooden Product Co., Ltd.; Power Dekor Group Co., Ltd.; Jiafeng Wood (Suzhou) Co., Ltd.; Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.; Shenyang Haobainian Wooden Co., Ltd.; Guangzhou Pan Yu Kang Da Board Co., Ltd.; Nakahiro Jyou Sei Furniture (Dalian) Co., Ltd.; Yixing Lion-King Timber Industry Co., Ltd.; Guangzhou Panyu Southernstar Co., Ltd.; Dalian Kemian Wood Industry Co., Ltd.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; Fu Lik Timber (HK) Co. Ltd.; Puli Trading Ltd.; Zhejiang Shiyou Timber Co., Ltd.; Shanghai Lizhong Wood Products Co., Ltd.; and Shenzhenshi Huanwei Woods Co. Ltd.

Daniel L. Porter, Matthew P. McCullough, Ross E. Bidlingmaier, and William H. Barringer, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for the Plaintiff-Intervenor the Bureau of Fair Trade for Imports & Exports, Ministry of Commerce, People's Republic of China.

Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant United States.  With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant

Director.  Of Counsel on the briefs was <u>Jonathan Zielinksi</u>,
Senior Attorney, Office of the Chief Counsel for Import
Administration, U.S. Department of Commerce.

    <u>Jeffrey S. Levin</u>, Levin Trade Law, P.C., of Bethesda,
MD, and <u>John B. Totaro, Jr.</u>, Neville Peterson, LLP, of
Washington, DC, for the Defendant-Intervenor the Coalition for
American Hardwood Parity.

    **Chief Judge Pogue**: This is a consolidated action

seeking review of determinations made by the United States

Department of Commerce ("Commerce" or "the Department") in the

countervailing duty ("CVD") investigation of multilayered wood

flooring from the People's Republic of China ("China").[2]

Currently before the court is Plaintiffs' Rule 56.2 Motion for

Judgment on the Agency Record.  In their motion, Plaintiffs

challenge three aspects of Commerce's <u>Final Determination</u>: (1)

Commerce's use of adverse facts available ("AFA") in determining

the benchmark rate for calculating the benefit Plaintiff Fine

Furniture received from the provision of electricity for less

than adequate remuneration; (2) Commerce's inclusion of the Basic

Electricity Tariff in the calculation of the electricity subsidy

rate in the <u>Final Determination</u> without notice and opportunity to

---

    [2] <u>Multilayered Wood Flooring from the People's Republic of
China</u>, 76 Fed. Reg. 64,313 (Dep't Commerce Oct. 18, 2011) (final
affirmative countervailing duty determination) ("<u>Final
Determination</u>"), and accompanying Issues & Decision Memorandum,
C-570-971, POI 09, Admin R. Pt. 2 Pub. Doc. 20, <u>available at</u>
http://ia.ita.doc.gov/frn/summary/PRC/2011-26892-1.pdf (last
visited Aug. 28, 2012) ("<u>I & D Mem.</u>") (adopted in the <u>Final
Determination</u>, 76 Fed. Reg. at 64,313).

comment by respondents; and (3) the inclusion of Shanghai Eswell

Enterprise Co., Ltd. and Elegant Living Corporation on the list

of non-cooperating companies.

As explained below, the court (1) affirms Commerce's

use of AFA in determining the benchmark for provision of

electricity at less than adequate remuneration; (2) affirms the

inclusion of the Basic Electricity Tariff as a component of the

electricity subsidy; and (3) remands the Final Determination to

Commerce to reconsider and remove or provide further explanation

for including Shanghai Eswell Enterprise Co., Ltd. and Elegant

Living Corporation on the list of non-cooperating companies.

The court has jurisdiction pursuant to

§ 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19

U.S.C. § 1516a(a)(2)(B)(i) (2006)[3] and 28 U.S.C. § 1581(c)

(2006).

## BACKGROUND[4]

This case arises from Commerce's initiation of a

countervailing duty investigation of multilayered wood flooring

from China, on November 18, 2010, following a petition from

--------

[3] All further citations to the Tariff Act of 1930, as
amended, are to Title 19 of the U.S. Code, 2006 edition.

[4] The following summary of facts is provided as general
background to the investigation at issue in this case; facts
specific to the determinations challenged are included in the
discussion of the relevant challenge.

Defendant-Intervenor the Coalition for American Hardwood Parity

("CAHP"). See Multilayered Wood Flooring from the People's

Republic of China, 75 Fed. Reg. 70,719, 70,719 (Dep't Commerce

Nov. 18, 2010) (initiation of countervailing duty investigation).

In its investigation, and pursuant to 19 U.S.C. § 1677f-1(c)(2),

Commerce limited the mandatory respondents to three companies and

their affiliates: (1) Fine Furniture (Shanghai) Ltd., Great Wood

(Tonghua) Ltd., and Fine Furniture Plantation (Shishou) Ltd.

(collectively "Fine Furniture"); (2) Zhejiang Layo Wood Industry

Co., Ltd. and Jiaxing Brilliant Import & Export Co., Ltd.

(collectively "Layo"); and (3) Zhejiang Yuhua Timber Co., Ltd.

("Yuhua"). Respondent Selection Memo, C-570-971, POI 09 (Dec. 30,

2010), Admin. R. Pt. 1 Pub. Doc. 193 at 4; Multilayered Wood

Flooring from the People's Republic of China, 76 Fed. Reg.

19,034, 19,038-39 (Dep't Commerce Apr. 6, 2011) (preliminary

affirmative countervailing duty determination) ("Preliminary

Determination"). In the Preliminary Determination, Commerce

assigned zero rates to Layo and Yuhua; a 2.25% rate to Fine

Furniture; a 2.25% all others rate for cooperating companies; and

a 27.01% rate for non-cooperating companies. Preliminary

Determination, 76 Fed. Reg. at 19,041-42. Following comments on

the Preliminary Determination, Commerce issued the Final

Determination on October 18, 2011. Final Determination, 76 Fed.

Reg. at 64,313. In the Final Determination, Commerce adjusted

the subsidy rates as follows: Layo and Yuhua received *de minimis*

rates; Fine Furniture received a 1.50% rate; all other

cooperating respondents received a 1.50% rate; and all non-

cooperating respondents received a 26.73% rate. <u>Final</u>

<u>Determination</u>, 76 Fed. Reg. at 64,315-17.


## STANDARD OF REVIEW

    "The court shall hold unlawful any determination,

finding, or conclusion found . . . to be unsupported by

substantial evidence on the record, or otherwise not in

accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).


## DISCUSSION

    A countervailing duty is imposed on an import whenever

Commerce determines that "the government of a country or any

public entity within the territory of a country is providing,

directly or indirectly, a countervailable subsidy . . . ." 19

U.S.C. § 1671(a).[5]  To be countervailable, a subsidy must provide

a financial contribution to a specific industry, and the

respondent must benefit.  <u>See</u> 19 U.S.C. § 1677(5)-(5A); <u>Essar</u>

<u>Steel Ltd. v. United States</u>, 34 CIT __, 721 F. Supp. 2d 1285,

─────────────────────

    [5] To impose a countervailing duty, the International Trade
Commission must also find "material injury" to a domestic
industry, 19 U.S.C. § 1671(a); however, the ITC's determination
is not at issue in this case.

1292 (2010).

        When investigating whether the statute requires
imposition of a countervailing duty order, Commerce often
requires both the respondent and the foreign government to submit
factual information. Essar Steel, 34 CIT at __, 721 F. Supp. 2d
at 1297 ("Typically, foreign governments are in the best position
to provide information regarding the administration of their
alleged subsidy programs, including eligible recipients.  The
respondent companies, on the other hand, will have information
pertaining to the existence and amount of the benefit conferred
on them by the program.").  In addition, when determining whether
or not a subsidy is countervailable, Commerce relies on facts
placed on the record by interested parties.

        When an interested party has failed to submit necessary
information, Commerce may make its determination on the basis of
facts otherwise available ("FOA"), and in certain circumstances
on the basis of AFA. 19 U.S.C. § 1677e(a)-(b).[6]  Before Commerce
may employ FOA, 19 U.S.C. § 1677m(d) provides respondents with an
opportunity to remedy or explain deficiencies in their
submissions. § 1677e(a); Reiner Brach GmbH & Co.KG v. United
States, 26 CIT 549, 555, 206 F. Supp. 2d 1323, 1330 (2002)

_____

        [6] The statute authorizes Commerce to make use of FOA when
(1) the record lacks necessary information or (2) a respondent
withholds information, fails to provide information, impedes a
proceeding, or provides unverifiable information. § 1677e(a).

(quoting Mannesmannrohren-Werke AG v. United States, 23 CIT 826,

837-38, 77 F. Supp. 2d 1302, 1313 (1999)).  In addition, FOA are

only appropriate to fill gaps in the record evidence when

Commerce must rely on other sources to complete the record.

Zhejiang Dunan Hetian Metal Co. v. United States, 652 F.3d 1333,

1346 (Fed. Cir. 2011).  When Commerce can independently fill in

the gaps, without the requested information, FOA and adverse

inferences are not appropriate. See id. at 1348; Gerber Food

(Yunnan) Co. v. United States, 29 CIT 753, 767-68, 387

F. Supp. 2d 1270, 1283 (2005).  Nonetheless, if Commerce finds

"that an interested party has failed to cooperate by not acting

to the best of its ability to comply with a request . . .

[Commerce] may use an inference that is adverse to the interests

of that party in selecting from among the facts otherwise

available." 19 U.S.C. § 1677e(b); Zhejiang, 652 F.3d at 1346.

I.   Commerce Properly Applied AFA in Determining the Benchmark
     for Provision of Electricity at Less than Adequate
     Remuneration

     A.   Background

          In the Final Determination, Commerce used adverse

inferences to determine that Plaintiff Fine Furniture received a

countervailable subsidy through the provision of electricity at

less than adequate remuneration (the "LTAR subsidy"). Final

Determination, 76 Fed. Reg. at 64,315.  Commerce made recourse to

adverse inferences because the Government of China ("GOC") failed

to provide requested information in the form of provincial

electricity price proposals. I & D Mem. Cmt. 4 at 43-44.

> The GOC did not provide a complete response to the
> Department's January 3, 2011 questionnaire regarding
> the alleged provision of electricity for LTAR.
> Specifically, the Department requested that the GOC
> provide the original provincial price proposals for
> 2006 and 2008 for each province in which a mandatory
> respondent or any reported "cross-owned" company is
> located.  Because the requested price proposals are
> part of the GOC's electricity price adjustment process,
> the documents are necessary for the Department's
> analysis of the program. . . . Consequently, we
> determine that the GOC has withheld necessary
> information that was requested of it and, thus, that
> the Department must rely on "facts available" in making
> our final determination.  Moreover, we determine that
> the GOC has failed to cooperate by not acting to the
> best of its ability to comply with our request for
> information as it did not respond by the deadline
> dates, nor did it explain to the Department's
> satisfaction why it was unable to provide the requested
> information.  Consequently, an adverse inference is
> warranted in the application of facts available.

I & D Mem. at 2 (footnotes omitted).  Using FOA and applying an

adverse inference, Commerce set a benchmark rate equal to the

highest rate reported in the provincial price schedules for

electricity. I & D Mem. at 3.

   B.   Analysis

        The dispute between the parties centers on whether the

adverse inferences drawn against the non-cooperating party, the

GOC, are rendered impermissible when they are collaterally

adverse to the cooperating party, Fine Furniture.  Fine Furniture

contends that the inferences drawn were impermissibly adverse to

Fine Furniture, who was a cooperating party in the investigation.

Commerce, however, argues that it properly employed inferences adverse to the GOC — the non-cooperating party — and that any impact on Fine Furniture was simply collateral, which does not render the inferences impermissible.  Neither party contests the fact that the GOC failed to provide necessary information to Commerce.

Among the financial contributions that are potentially countervailable is the provision of goods and services at less than adequate remuneration. 19 U.S.C. § 1677(5)(E)(iv).  In order to determine if a benefit is provided at less than adequate remuneration, the price paid is compared with a price set by "prevailing market conditions for the good or service being provided . . . in the country which is subject to the investigation or review." § 1677(5)(E).  Commerce has promulgated further regulations for determining this "benchmark" value. 19 C.F.R. § 351.511(a)(2)(i)-(iii) (2012)[7]; <u>Essar Steel</u>, 34 CIT at __, 721 F. Supp. 2d at 1292.[8]

---

[7] All subsequent citations to the Code of Federal Regulations are to the 2012 edition, unless otherwise noted.

[8] These regulations set up a three tier system for determining the benchmark.  First, "[t]he Secretary will normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price for the good or service resulting from actual transactions in the country in question." 19 C.F.R. § 351.511(a)(2)(i).  Second, if no market-determined price is available from within the country in question, then "the Secretary will seek to measure the adequacy of remuneration by comparing the government price to a world
                                            (footnote continued)

In this case, no benchmarks consistent with 19 C.F.R.
§ 351.511(a)(2)(i)-(ii) were available.[9]  Therefore, Commerce
sought to value the benchmark by assessing the relationship of
the government price to market principles, pursuant to
§ 351.511(a)(2)(iii), but found that the GOC's refusal to provide
the provincial price proposals prevented it from determining if
the prices were consistent with any market principles.  I & D Mem.
Cmt. 4 at 43-44.  Because it did not have the data to value a
benchmark, Commerce relied upon FOA, 19 U.S.C. § 1677e(a), in the
form of the provincial price schedules on the record.  Because

---

[8] (footnote continued)
market price where it is reasonable to conclude that such price
would be available to purchasers in the country in question."
§ 351.511(a)(2)(ii).  Finally, if neither an actual market-
determined price nor a world market price is available, "the
Secretary will normally measure the adequacy of remuneration by
assessing whether the government price is consistent with market
principles." § 351.511(a)(2)(iii).

[9] As all parties agree in their responses to the court's
further briefing request, electricity in China cannot be valued
through actual transactions in the country, § 351.511(a)(2)(i),
because rates are set by the government, nor can electricity be
valued using a world market price, § 351.511(a)(2)(ii), because
it cannot be purchased on the world market.  See Def.'s Resp. to
the Court's June 25, 2012 Letter at 3, ECF No. 73; Pls.' Letter
Br. at 3, ECF No. 74; see also Countervailing Duties, 63
Fed. Reg. 65,348, 65,377 (Dep't Commerce Nov. 25, 1998) (final
rule) ("We will consider whether the market conditions in the
country are such that it is reasonable to conclude that the
purchaser could obtain the good or service on the world market.
For example, a European price for electricity normally would not
be an acceptable comparison for electricity provided by a Latin
American government, because electricity from Europe in all
likelihood would not be available to consumers in Latin
America.").

the necessary information was lacking as a result of the GOC's refusal to provide it, Commerce also applied an adverse inference pursuant to 19 U.S.C. § 1677e(b).

Fine Furniture's plea for the use of neutral facts in calculating the benchmark is not without some persuasive force. Often, the calculation of the benefit is drawn from the record submissions of the respondent companies. See Essar Steel, 34 CIT at __, 721 F. Supp. 2d at 1297 ("[T]he agency then attempts to use information provided by the individual respondent companies regarding the benefit, if any, conferred by the particular program."). Where the respondents have placed evidence on the record consistent with the Department's regulations for calculating benchmarks, see 19 C.F.R. § 351.511(a)(2), Commerce would be expected to consider such evidence. Furthermore, if an alternative benchmark meeting such criteria were available on the record and did not adversely affect a cooperative party, such a benchmark would be superior to one which does adversely affect a cooperative party.[10]

_____

[10] Commerce is correct that the inference drawn in this case was not directly adverse to Fine Furniture. It is true that Fine Furniture is adversely affected by the use of the highest rates included in the provincial price proposals. However, the inference drawn was prompted by the GOC's failure to cooperate and was adverse to the interests of the GOC. We do not treat the GOC and Fine Furniture as a joint entity in making our determination; rather, we acknowledge that, in the context of a CVD investigation, an inference adverse to the interests of a non-cooperating government respondent may collaterally affect a
(footnote continued)

The problem for Fine Furniture is that there is no such benchmark on the record in this case.  Commerce employed FOA because the lack of the provincial price proposals prevented it from determining whether the electricity rates provided by respondent companies were set pursuant to market principles. § 351.511(a)(2)(iii).  Because the price proposals were necessary to determine the benchmark rate, and the GOC refused to provide them, Commerce also applied an adverse inference.[11]  Though Fine Furniture was put on notice by the benchmark regulation, it did not place on the record any alternative benchmarks consistent

---

[10] (footnote continued)
cooperative respondent.  While such an inference is permissible under the statute, it is disfavored and should not be employed when facts not collaterally adverse to a cooperative party are available.

[11] In the letter briefing requested by the court, Plaintiffs argue that there was sufficient indicia in the record for Commerce to determine that the provincial price schedules reflected market-determined rates.  Pls.' Letter Br. at 3-4.  When reviewing Commerce's determinations on a substantial evidence standard, the court considers whether the determination is supported by substantial evidence on the record as a whole. See Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997).  "[T]he possibility of drawing two inconsistent conclusions from the evidence does prevent an administrative agency's finding from being supported by substantial evidence," Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966), and "[t]he court is not empowered to substitute its judgment for that of the agency." Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), abrogated on other grounds by Califeno v. Sanders, 430 U.S. 99, 105 (1977).  Though there is some evidence on the record suggesting that the provincial price schedules could reflect market-determined prices, the court will not upset Commerce's determination that the provincial price proposals were a critical element in arriving at such a conclusion.

with § 351.511(a)(2).

        Fine Furniture did propose what it terms a "neutral benchmark," which would be calculated by averaging all rates within the same user category of the provincial price schedule as Fine Furniture's rate, and argued that its proposed benchmark would be more appropriate.  However, there is nothing to indicate that Fine Furniture's proposed neutral benchmark would more accurately reflect a market-determined price for electricity. Therefore, Fine Furniture's proposed neutral benchmark is, in fact, not a benchmark, see § 351.511(a)(2), because it fails to establish the relationship that Fine Furniture's electricity rates bear to a market determined rate.  In a situation such as this, where an interested party "failed to cooperate by not acting to the best of its ability to comply with a request for information," 19 U.S.C. § 1677e(b), and that information was necessary to the subsidy calculation, 19 U.S.C. § 1677e(a) — thereby fulfilling the prerequisites for the use of both FOA and adverse inferences — Commerce acted within its statutory authority in applying both FOA and an adverse inference.

        If the record contained evidence that met one of the three regulatory requirements for setting a benchmark, Fine Furniture may have been able to argue that Commerce should have relied upon that record evidence.  However, the neutral benchmark requested by Fine Furniture does not meet this test.  The neutral

benchmark is no better proxy for a market determined rate than
the AFA benchmark.  Without showing that the neutral benchmark
better complies with the statutory and regulatory requirements,
Fine Furniture is asking the court to substitute its judgment for
that of Commerce, but this is not the court's role. Inland Steel
Indus., Inc. v. United States, 188 F.3d 1349, 1360-61 (Fed. Cir.
1999); Ad Hoc Shrimp Trade Action Comm. v. United States, 36 CIT
__, 828 F. Supp. 2d 1345, 1350 (2012).

     Accordingly, because Commerce's decision to apply AFA
in calculating the LTAR subsidy is consistent with the statute
and regulations, and because the court does not substitute or
displace Commerce's judgment with regard to the weight or
credibility of the evidence, the use of AFA in setting the LTAR
subsidy benchmark is affirmed.

II.  Commerce's Failure to Provide Notice and Opportunity to
     Comment on Inclusion of the Basic Electricity Tariff Was
     Harmless Error

     A.   Background

     In the Final Determination, Commerce included the Basic
Electricity Tariff ("BET") in the calculation of the benefit for
the LTAR subsidy. I & D Mem. at 14.  This cost was not included
in the calculation of the LTAR subsidy in the Preliminary
Determination. Id.  Nor were Plaintiffs given any notice that
Commerce had decided to include the BET in calculation of the
LTAR subsidy prior to publication of the Final Determination.

  B.   *Analysis*

       Plaintiffs raise a procedural challenge to the
inclusion of the BET, arguing that Commerce's failure to provide
notice and an opportunity for comment violated 19 U.S.C.
§ 1677m(g).[12]  Plaintiffs premise their argument, in large part,
on the contention that the BET was a separate subsidy from the
LTAR subsidy, and therefore, it required a separate subsidy
investigation.

       Commerce responds that the BET is not a separate
subsidy, rather it is a component of the LTAR subsidy.
Therefore, according to Commerce, the inclusion of the BET in the
<u>Final Determination</u> was merely the correction of an oversight in
the <u>Preliminary Determination</u>.

       Commerce's response has weight because the BET is best
characterized as a component of the LTAR subsidy.  The BET is an
element of respondents' overall electricity payment; therefore,
it is reasonable for Commerce to include the BET in the
calculation of benefit under the LTAR subsidy.  This
determination is also consistent with Commerce's practice in

---

       [12] 19 U.S.C. § 1677m(g) reads, in relevant part:

       [Commerce] . . . before making a final determination
       under section 1671d, 1673d, 1675, or 1675b of this
       title shall cease collecting information and shall
       provide the parties with a final opportunity to comment
       on the information obtained by [Commerce] . . . upon
       which the parties have not previously had an
       opportunity to comment.

other countervailing duty determinations regarding merchandise

from China.[13]

     Nonetheless, our finding that the BET was an aspect of

the LTAR subsidy does not lead us to conclude that Commerce

followed proper procedure when it included the BET in the <u>Final</u>

<u>Determination</u> without first including it in the <u>Preliminary</u>

<u>Determination</u> or otherwise providing notice and an opportunity to

comment.  To the contrary, Commerce should have included the BET

in the <u>Preliminary Determination</u>, thereby permitting Plaintiffs

an opportunity to challenge that determination at the

administrative level.  Commerce did not do this.  In this regard,

the inclusion of the BET was procedurally defective.[14]

---

[13] <u>See, e.g.</u>, <u>Drill Pipe from the People's Republic of</u>
<u>China</u>, 76 Fed. Reg. 1971 (Dep't Commerce Jan. 11, 2011) (final
affirmative countervailing duty determination) and accompanying
Issues and Decision Memorandum at 27, C-570-966, POI 09 (Jan. 11,
2011), <u>available at</u>
http://ia.ita.doc.gov/frn/summary/PRC/2011-392-1.pdf (last
visited Aug. 29, 2012); <u>Pre-Stressed Concrete Steel Wire Strand</u>
<u>from the People's Republic of China</u>, 75 Fed. Reg. 28,557 (Dep't
Commerce May 21, 2010) (final affirmative countervailing duty
determination) and accompanying Issues and Decision Memorandum at
33-34, C-570-946, POI 08 (May 14, 2010), <u>available at</u>
http://ia.ita.doc.gov/frn/summary/prc/2010-12292-1.pdf (last
visited Aug. 29, 2012).

[14] The court need not decide whether the specific action
challenged here was a violation of 19 U.S.C. § 1677m(g).  It is
sufficient to note that plaintiffs challenging agency action
before the Court of International Trade are required to exhaust
their administrative remedies. 28 U.S.C. § 2637(d) (2006);
<u>Consol. Bearings Co. v. United States</u>, 348 F.3d 997, 1003 (Fed.
Cir. 2003).  When Commerce fails to provide an opportunity for
comment, it inhibits a plaintiff's opportunity to exhaust its
    (footnote continued)

However, in the absence of a substantive challenge to
the inclusion of the BET, the procedural defect is harmless
error. See Cummins Engine Co. v. United States, 23 CIT 1019,
1032, 83 F. Supp. 2d 1366, 1378 (1999) ("In reviewing an agency's
procedural error for which the law does not prescribe a
consequence . . . it is well settled that principles of harmless
error apply. . . . Under the rule of prejudicial error, or
harmless error analysis, the Court will not overturn an agency's
action 'if the procedural error complained of was harmless.'"
(quoting Barnhart v. United States Treasury Dep't, 7 CIT 295,
302, 588 F. Supp. 1432, 1437 (1984))).

Because Plaintiffs do not raise any compelling
substantive arguments, the court finds no reason to remand the
case to Commerce for further explanation or proceeding.[15]

---

[14](footnote continued)
administrative remedies.  While the court finds that it may hear
a challenge in such a case, see infra note 15, the procedural
defect may be relevant when the record is insufficiently
developed for the court to render a decision.

[15] Plaintiffs would not have been barred from bringing
substantive claims before this court by the exhaustion of
administrative remedies doctrine.  Prior case law supports the
court's capacity to hear and decide a challenge on substantive
grounds that was not raised at the administrative level, when no
opportunity for comment was provided. See China Steel Corp. v.
United States, 28 CIT 38, 59, 306 F. Supp. 2d 1291, 1310 (2004)
("[I]n determining whether questions are precluded from
consideration on appeal, the [Court of International Trade] will
assess the practical ability of a party to have its arguments
considered by the administrative body." (citation omitted)); see
also Lifestyle Enter. v. United States, 35 CIT __, 768 F. Supp.
(footnote continued)

Plaintiffs' primary argument, that Commerce should have initiated

a separate investigation of the BET subsidy, is unavailing

because Commerce reasonably determined that the BET was merely an

element of the larger LTAR subsidy.  Plaintiffs do not raise any

further substantive arguments in their letter brief to the court,

except for a fleeting reference to other non-included payments

purportedly analogous to the BET. Pls.' Letter Br. at 6 ("Even

without the benefit of a proper investigation, however, there is

evidence to suggest that the BET is different from the other

electricity charges that Commerce found to be countervailable

subsidies.").  What has been provided is insufficient for the

court to conclude that Plaintiffs have a substantive claim

regarding the BET.  Therefore, Commerce's inclusion of the BET in

the benefit calculation for the LTAR subsidy in the <u>Final</u>

<u>Determination</u> without first addressing it in the <u>Preliminary</u>

<u>Determination</u> is harmless error.

---

[15](footnote continued)
2d 1286, 1300 n.17 (2011) ("A party, however, may seek judicial
review of an issue that it did not brief at the administrative
level if Commerce did not address the issue until its final
decision, because in such a circumstance the party would not have
had a full and fair opportunity to raise the issue at the
administrative level."); <u>Globe Metallurgical, Inc. v. United
States</u>, 29 CIT 867, 873 (2005) ("The court has recognized certain
exceptions to the application of the exhaustion doctrine.  One
such applicable exception arises when the respondent is not given
the opportunity to raise its objections at the administrative
level because Commerce did not address the issue until the final
determination.").

### III. Inclusion of Elegant Living and Eswell Enterprise on the AFA List Was Not Supported by Substantial Evidence

A.    *Background*

In order to select mandatory respondents for the instant CVD investigation, Commerce issued quantity and value ("Q&V") questionnaires to, *inter alia*, Shanghai Eswell Enterprise Co., Ltd. ("Eswell Enterprise"), Elegant Living Corp. ("Elegant Living"), and Times Flooring Co., Ltd. ("Times Flooring"). Issuance of Q&V Questionnaires, C-570-971, POI 09 (Dec. 3, 2010), Admin. R. Pt. 1 Pub. Doc. 91 attach. 1.  When no company under these names responded, Commerce placed these companies on the list of non-cooperating companies that would receive an AFA rate. Preliminary Determination, 76 Fed. Reg. at 19,042.

Following the Preliminary Determination, Plaintiffs filed ministerial error allegations protesting the inclusion of Eswell Enterprise, Elegant Living, and Times Flooring on the AFA list.  In the ministerial error allegations, Plaintiff Shanghai Eswell Timber Co., Ltd. ("Eswell Timber") argued that Eswell Enterprise was its non-exporting parent company, Eswell Timber Ministerial Error Comments, C-570-971, POI 09 (Mar. 25, 2011), Admin. R. Pt. 1 Pub. Doc. 256 at 1-2 ("Eswell Allegation"), and Plaintiff Samling Group argued that Elegant Living and Times Flooring represented inaccurate listings of, respectively, Baroque Timber Industries (Zhongshan) Co., Ltd., ("Baroque Timber") and Suzhou Times Flooring Co., Ltd., Samling Group

Ministerial Error Allegation, C-570-971, POI 09 (Mar. 24, 2011),

Admin. R. Pt. 1 Pub. Doc. 255 at 2 ("Samling Allegation").

     In response to the ministerial error allegations,

Commerce requested additional information from Plaintiffs.

Ministerial Error Allegations Mem., C-570-971, POI 09 (Apr. 21,

2011), Admin. R. Pt. 1 Pub. Doc. 270 at 4; I & D Mem. Cmt. 6 at

47-48.  Eswell Timber provided business and shareholder

information outlining Eswell Enterprise's ownership of Eswell

Timber and a statement from Eswell Enterprise confirming that it

did not independently export subject merchandise. Eswell Timber

Questionnaire Resp., C-570-971, POI 09 (June 30, 2011), Admin. R.

Pt. 1 Pub. Doc. 326 at 5, attach. 1 ("Eswell Resp.").  Samling

Group provided information on its corporate and capital

structure, noting that, though no company under the name Elegant

Living existed within the Samling Group hierarchy, Baroque Timber

occasionally uses "Elegant Living" as a trade name. Samling Group

Questionnaire Resp., C-570-971, POI 09 (June 30, 2011), Admin. R.

Pt. 1 Pub. Doc. 325 exs. A, B ("Samling Resp."); Samling 6/30

Questionnaire Public Version Narrative, C-570-971, ARP 09 (July

1, 2011), Admin. R. Pt. 1 Pub. Doc. 328 at 2 ("Samling Narrative

Resp.").

     Commerce eventually removed Times Flooring from the AFA

list but not Eswell Enterprise or Elegant Living. Final

Determination, 76 Fed. Reg. at 64,315-17; I & D Mem. Cmt. 6 at

49.  According to Commerce, although the strong similarities in

names and addresses shared by the "Times Flooring" companies

justified merging the two, Baroque Timber and Elegant Living did

not share equally dispositive similarities. I & D Mem. Cmt. 6 at

49.  Commerce primarily justified its decision by relying on

evidence that separate companies within Samling Group used

"elegant living" as part of their names. Id.; Samling Resp.

ex. B.  Therefore, Commerce reasons, since a company separate

from Baroque Timber potentially existed, a separate response

should have been filed on behalf of Elegant Living. See I & D

Mem. Cmt. 6 at 49.  Likewise, Commerce concluded that Eswell

Enterprise was a separate company from Eswell Timber, and

therefore, it should have responded separately to the Q&V

questionnaire it received. Id.

     B.   Analysis

          In the instant case, Commerce emphasizes Plaintiffs'

failure to submit information by the Q&V deadline as a failure to

cooperate, thereby justifying the application of AFA. Def.'s

Resp. at 26-27.  And, certainly, setting and enforcing its own

deadlines is within Commerce's discretion.  See, e.g., Reiner

Brach, 26 CIT at 559, 206 F. Supp. 2d at 1334 ("Commerce has

broad discretion to establish its own rules governing

administrative procedures, including the establishment and

enforcement of time limits . . . .");  Yantai Timken Co. v. United

States, 31 CIT 1741, 1755, 521 F. Supp. 2d 1356, 1371 (2007) ("In
order for Commerce to fulfill its mandate to administer the
antidumping duty law, including its obligation to calculate
accurate dumping margins, its must be permitted to enforce the
time frame provided in its regulations."). Furthermore, this
Court has upheld Commerce's enforcement of its regulatory
deadlines when it rejects new factual information submitted after
the applicable deadline and subsequently applies AFA. Hyosung
Corp. v. United States, 35 CIT ___, Slip. Op. 11-34 at *9-11 (Mar.
31, 2011) (upholding Commerce's use of adverse inferences when
the respondent failed to report that it did not have shipments of
subject merchandise in response to a Q&V questionnaire); see also
Uniroyal Marine Exps. Ltd. v. United States, 33 CIT ___, 626 F.
Supp. 2d 1312, 1316-17 (2009); Yantai Timken, 31 CIT at 1755-56,
521 F. Supp. 2d at 1371; Reiner Brach, 26 CIT at 559, 206 F.
Supp. 2d at 1334.

        Nevertheless, Commerce's discretion in rejecting
untimely information is not absolute. Rather, as the Court of
Appeals has held, Commerce abuses its discretion when it refuses
to consider untimely "corrective" information. Timken U.S. Corp.
v. United States, 434 F.3d 1345, 1353-54 (Fed. Cir. 2006); NTN
Bearing Corp. v. United States, 74 F.3d 1204, 1208-09 (Fed. Cir.
1995). "[A] regulation which is not required by statute," such
as the timeliness regulation, "may, in appropriate circumstances,

be waived and must be waived where failure to do so would amount

to an abuse of discretion." <u>NTN Bearing Corp.</u>, 74 F.3d at 1207.

In addition, when considering correction of an error at the

preliminary results stage, the court "balance[s] the desire for

accuracy . . . with the need for finality at the final results

stage." <u>Timken</u>, 434 F.3d at 1353-54.  When a respondent seeks to

correct an error after the preliminary results but before the

final results, this court may require Commerce to analyze the new

information. <u>See</u> <u>id.</u>[16]

When considering whether a rejection of untimely

information amounts to an abuse of discretion, the court weighs

the burden of accepting late submissions and the need for

finality against the statute's goals of accuracy and fairness.

<u>See</u> <u>Grobest & I-Mei Indus. (Vietnam) Co. v. United States</u>, 36 CIT

---

[16] The Court of Appeals recently held in <u>PSC VSMPO-AVISMA v. United States</u>, Appeal No. 2011-1370, -1395 at *17 (Fed. Cir. July 27, 2012) that "[t]he role of judicial review is limited to determining whether the record is adequate to support the administrative action.  A court cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered."  However, <u>PSC VSMPO-AVISMA</u> is distinguishable from the Court of Appeals' prior holdings in <u>NTN Bearings</u> and <u>Timken</u>.  Whereas <u>PSC VSMPO-AVISMA</u> concerned submission of factual information to supplement the record, <u>NTN Bearings</u> and <u>Timken</u> concerned correction of errors at the preliminary results stage.  We do not read <u>PSC VSMPO-AVISMA</u>'s holding that the court should not interfere with the creation of the administrative record to be in tension with the court's responsibility to review Commerce's consideration of errors for abuse of discretion.  Furthermore, in this case Commerce requested new factual information to supplement the record, so the concerns expressed in <u>PSC VSMPO-AVISMA</u> are not present.

__, 815 F. Supp. 2d 1342, 1365 (2012); <u>Fischer S.A. Comercio,</u>

<u>Industria & Agricultura v. United States</u>, 34 CIT __, 700 F. Supp.

2d 1364, 1375-77 (2010). "Thus, while deferring to Commerce's

necessary discretion to set and enforce its deadlines, the court

will review on a case-by-case basis whether the interests of

accuracy and fairness outweigh the burden placed on the

Department and the interest in finality." <u>Grobest</u>, 36 CIT at __,

815 F. Supp. 2d at 1365. "Finality concerns only begin to

counterbalance accuracy concerns when [Commerce] reaches the

final results stage." <u>Fischer</u>, 34 CIT at __, 700 F. Supp. 2d

at 1375.

    In this case Commerce, following the <u>Preliminary</u>

<u>Determination</u> and in response to Plaintiffs' ministerial error

allegations, sought additional evidence in support of Plaintiffs'

claims, which Plaintiffs subsequently placed on the record.

Commerce's failure to take into account that evidence amounts to

an abuse of discretion where, as here, the concerns for accuracy

and fairness outweigh concerns of finality and agency burden.[17]

Furthermore, Commerce's failure to take into account evidence on

the record that supported removing Elegant Living and Eswell

---

    [17] Because both the ministerial error allegations and the
new record evidence occurred prior to the <u>Final Determination</u>,
there are no significant finality concerns here. Nor does the
relatively small amount of new record evidence to be considered
present any concern with regard to agency burden. <u>Cf.</u> <u>Fischer</u>, 34
CIT at __, 700 F. Supp. 2d at 1376-77.

Enterprise from the AFA list renders the determination unsupported by substantial evidence. <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

The record contains evidence that Elegant Living is a misidentification of Baroque Timber.  The Samling Group put evidence on the record that Baroque Timber (1) uses "Elegant Living" as a trade name and brand, (2) resides at the address listed for Elegant Living, and (3) exports subject merchandise. Samling Allegatin at 2; Samling Narrative Resp. at 1-2. Furthermore, Samling Group submitted evidence demonstrating that no company with the exact name of Elegant Living Corporation exists within the company hierarchy. <u>See</u> Samling Resp. ex. B.[18]

In rejecting the evidence supporting Plaintiffs' claim, Commerce pointed to Samling's annual report to demonstrate the existence of several "Elegant Living" companies within Samling Group, notably a company in the PRC owned by Baroque Timber and named Shanghai Elegant Living Timber Products. <u>I & D Mem.</u> Cmt. 6 at 49.  Commerce may be correct in asserting that because "Elegant Living" could have identified multiple companies separate from Baroque Timber, "additional Q&V Questionnaire

---

[18] The court notes that the exact same evidence led Commerce to remove Times Flooring from the AFA list. <u>See</u> <u>I & D Mem.</u> Cmt. 6 at 49.

responses should have been submitted, even if they indicated 'no exports.'" Id.  However, such argument simply ignores the evidence indicating that the "Elegant Living" in the petition was Baroque Timber, as well as evidence that no actual Elegant Living Corporation exists.[19]  Failure to take this evidence into account fails the substantial evidence test.  If Commerce wishes to keep an "Elegant Living" company on the AFA list, the interests of accuracy and fairness demand that Commerce must either determine, based on substantial evidence, that Elegant Living Corporation does exist or determine what company within Samling Group, if any, failed to cooperate.

Commerce has a stronger case for including Eswell Enterprise, but not one which ultimately meets the substantial evidence standard.  A determination of affiliation or collapsing falls to Commerce to decide and not to respondents in deciding what information to supply.  Cf. Reiner Brach, 26 CIT at 556-57, 206 F. Supp. 2d at 1331.  Moreover, the Q&V questionnaire clearly requested from the recipient, Eswell Enterprise, information regarding exportation of subject merchandise. Q&V Questionnaire, C-570-971, POI 09 (Dec. 3, 2010), Admin. R. Pt. 1 Pub. Doc. 90

---

[19] Commerce does not contend in its briefs that Elegant Living Corporation exists.  In this sense, there is no dispute between the parties as to the existence of Elegant Living; rather they dispute the application of AFA.  It is difficult to see how leaving Elegant Living on the AFA list serves any purpose when no such company exported or will export anything to the United States.

Attach. 1.  The accompanying letter also warned that failure to cooperate to the best of one's ability could result in the use of adverse inferences. Id. at 1.  Thus, Eswell Enterprise could have simply responded with "no exports."

Had no further evidence regarding Eswell Enterprise been placed on the record, our inquiry might end here. Cf. Hyosung, 35 CIT at __, Slip. Op. 11-34 at *10-11.  However, unlike the facts of Hyosung, where Commerce rejected untimely new information, in this case Commerce sought and permitted Plaintiffs to place additional information on the record.  This includes evidence indicating that Eswell Enterprise is the parent company of Eswell Timber and that Eswell Enterprise does not independently export subject merchandise.

Commerce may not request and subsequently ignore record evidence.  As discussed above, Eswell Enterprises's failure to respond to the Q&V Questionnaire is not dispositive once a correction is requested and new evidence is placed on the record. Under these circumstances, Commerce must consider the evidence so long as the concerns for accuracy and fairness outweigh those for finality and agency burden — which they do here — and failure to consider the evidence renders a determination unsupported by substantial evidence.

Because the record contains evidence permitting Commerce to determine that Elegant Living and Eswell Enterprise

were not companies that belonged on the AFA list and Commerce

unjustifiably failed to take into account this evidence, the

court finds Commerce's decision unsupported by substantial

evidence and remands for reconsideration.


### CONCLUSION

In accordance with the foregoing opinion, the Final

Determination, is affirmed, in part, and remanded, in part.

Commerce's decisions to use AFA in calculating the

value of the LTAR subsidy and the inclusion of the BET in the

Final Determination are affirmed.  Commerce's inclusion of

Elegant Living and Eswell Enterprises is remanded for

reconsideration or further explanation consistent with this

opinion.

Commerce shall have until October 30, 2012, to complete

and file its remand redetermination.  Plaintiffs and Defendant-

Intervenors shall have until November 13, 2012, to file comments.

Plaintiffs, Defendant, and Defendant-Intervenors shall have until

November 27, 2012, to file any reply.


                                    /s/ Donald C. Pogue
                                 Donald C. Pogue, Chief Judge


Dated: August 31, 2012
       New York, New York